UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

KELLY HOOD and                                      CIV. NO. 13-1068 (DSD/JSM)
LISA G. HOOD,

       Plaintiffs,                          <u>REPORT AND RECOMMENDATION</u>

v.

FEDERAL HOME LOAN MORTGAGE CORPORATION,
U.S. BANK, NATIONAL ASSOCIATION, MORTGAGE
ELECTRONIC REGISTRATION SYSTEM, INC.,
MERSCORP HOLDINGS, INC., and also all
other persons, unknown claiming any right,
title, estate, interest, or lien in the real
estate described in the complaint herein,

       Defendants.

      This matter came before the undersigned on defendants' Motion to Dismiss

[Docket No. 5].  This matter has been referred to the undersigned Magistrate Judge for

a Report and Recommendation by the District Court pursuant to 28 U.S.C.

§ 636(b)(1)(A),(B) and Local Rule 72.1(c).   Pursuant to this Court's Order dated

September 6, 2013 [Docket No. 15] this Report and Recommendation is being issued

based on the parties' written submissions.

      Plaintiffs seek to invalidate the foreclosure of the mortgage on their home.

Plaintiffs assert three claims against defendants Federal Home Loan Mortgage

Corporation ("Freddie Mac"), U.S. Bank, National Association ("U.S. Bank"), Mortgage

Electronic Registration System, Inc. ("MERS"), and MERSCORP Holdings, Inc.: (1)

quiet-title, to determine adverse claims under Minn. Stat. § 559.01; (2) declaratory

judgment; and (3) slander of title.  For the reasons below, the Court recommends that

defendants'[1] Motion to Dismiss be granted and plaintiffs' claims be dismissed with prejudice.

## I.    BACKGROUND

### A.    Plaintiffs' Complaint

On May 19, 2013, plaintiffs, sued defendants in state court.  Notice of Removal, Ex. Attach. 1 (Complaint) [Docket No. 1-3].  Defendants removed the suit to federal district court on April 22, 2013.  Notice of Removal [Docket No. 1].  Defendants moved to dismiss plaintiffs' Complaint in lieu of answering.

The facts bearing on defendants' motion to dismiss are as follows.  On August 30, 2002, plaintiffs executed a note to Bell Mortgage LLC dba Bell Mortgage ("Bell") on property located in Rodgers, Minnesota ("Property").  Complaint [Docket No. 1-1], ¶ 7; Affidavit of Stephanie Anne Smith in Support of Defendant's Motion to Dismiss [Docket No. 8] ("Smith Aff."), Ex. A (June 23, 2005 Note).  On June 23, 2005, plaintiffs executed a mortgage in favor of MERS, as nominee for Bell.  Complaint, ¶ 7, Ex. 1 (Mortgage).[2] The Mortgage was recorded on August 10, 2005.  Complaint, Ex. 1 (Mortgage).  Bell was listed as the lender and MERS was listed as the mortgagee on the Mortgage.  Id.

---

[1]     In the caption of the Complaint, plaintiffs also purport to sue "all other persons unknown claiming any right, title, estate, interest, or lien in the real estate described in the complaint herein." As "[t]here are no factual allegations sufficient to identify these unnamed defendants or state a claim against them;" the Court therefore recommends that all claims against them be dismissed.  See Sonsalla v. Mortg. Elec. Registration Sys., Inc., Civ. No. 13-659, 2013 WL 4052825, *1 (D. Minn. Aug. 9, 2013) (citing Estate of Rosenberg ex rel. Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir.1995) (affirming dismissal of unidentified defendants about whom no factual allegations were made)).

[2]     While the Complaint referred to exhibits, none were attached to the Complaint filed with the Notice of Removal.  See Docket No. 1.  Pursuant to a request by the Court, defendants' counsel submitted to the Court a copy of the exhibits that were attached to the Complaint.

Plaintiffs deny that defendants had an interest in or the right to declare default on the Note. Id., ¶ 8. "Upon information and belief," Bell … originated the loan for delivery to Freddie Mac." Id., ¶ 9.

On March 30, 2011, Maria Lawrence, Assistant Secretary of MERS, executed an Assignment of Mortgage from MERS, as the nominee for Bell, to U.S. Bank , which was recorded in the Hennepin County Office of the Recorder on May 6, 2011.  Id., ¶ 10, Complaint, Ex. 2 (Assignment of Mortgage).  "Upon information and belief," Lawrence did not have legal authority to execute the Assignment of Mortgage as she was an employee of U.S. Bank on March 30, 2011."  Id., ¶ 11; Ex. 3 (Skip Trace Report). Plaintiffs claimed there was no evidence of Lawrence's power to execute foreclosure documents on behalf of MERS and the failure to record this power violated Minn. Stat. §§ 580.02 and 507.413.  Id., ¶ 11.

Plaintiffs pled "[u]pon information and belief" that Freddie Mac acquired its interest in the Mortgage prior to the commencement of the foreclosure by advertisement and that no assignment of mortgage from MERS to Freddie Mac appeared in the records of the Hennepin County Recorder.  Id., ¶ 12.  Plaintiffs also alleged "[u]pon information and belief" that prior to March 30, 2011, the loan was deactivated with MERS. Id., ¶ 13.

According to plaintiffs, Freddie Mac's Custodial Agreement required that a seller or servicer deliver to the custodian a prepared and executed assignment of the security instrument from the seller or servicer to Freddie Mac in a recordable form but not recorded, and that pursuant to this agreement, MERS, as the predecessor to Freddie

Mac, prepared and delivered an assignment of mortgage to Freddie Mac, which had the power of sale contained in the Mortgage.  Id., ¶¶ 14-16.

On April 21, 2011, Lawrence, Assistant Vice President of U.S. Bank, executed a Notice of Pendency and Power of Attorney to Foreclosure Mortgage, which empowered the law firm of Usset, Wengarden & Liebo, P.L.L.P. ("Usset") to foreclose on the Property and to bid on the Property at the foreclosure sale.  Id., ¶ 18, Ex. 6 (Notice of Pendency and Power of Attorney to Foreclosure Mortgage).  The Notice of Pendency and Power of Attorney to Foreclosure Mortgage was recorded in the Hennepin County Office of the Recorder on May 6, 2011.  Id.  Plaintiffs claim "[u]pon information and belief" that Lawrence did not have the legal authority to execute the Notice of Pendency and Power of Attorney "as MERS did not have any interest in the property as there exists an unrecorded assignment of the mortgage to Freddie Mac."  Id., ¶ 19.

On May 3, 2011, U.S. Bank, through Usset, noticed a sheriff's sale for the Property for June 21, 2011.  Id., ¶ 24; Smith Aff., Ex. J (May 3, 2011 Notice of Foreclosure Sale).

On June 20, 2011, the United States Bankruptcy Court for the District of Minnesota, entered a Notice of Chapter 7 Bankruptcy Case, which notified creditors of a stay on actions against plaintiffs' property.  See Smith Aff., Ex. K (Notice of Chapter 7 Bankruptcy Case).  On August 4, 2011, the Bankruptcy Court granted U.S. Bank's motion to allow for the foreclosure of the mortgage on the Property.  Id., Ex. L (August 4, 2011 Order).

On August 12, 2011, U.S. Bank executed a Notice of Foreclosure Sale and served it on plaintiffs on August 19, 2011.  Id., Ex. M.  Additionally, on August 12, 2011,

Brian Liebo, a partner at Usset, executed a Notice of Pendency to Foreclose Mortgage empowering Usset to foreclose on the Mortgage and to bid for the Property at the foreclosure sale, which was recorded in the Hennepin County Office of the Recorder on August 18, 2011.  Complaint, ¶ 20, Ex. 7 (Notice of Pendency to Foreclose Mortgage). "On information and belief," plaintiffs claimed that Liebo did not have the legal authority to execute the Notice of Pendency "as MERS did not have any interest in the property as there exists an unrecorded assignment of the mortgage to Freddie Mac," and there is no evidence of U.S. Bank authorizing Usset or Liebo to execute documents on behalf of U.S. Bank, which is a violation of Minn. Stat. § 507.413 and Minn. Stat. § 580.05.  Id., ¶ 21.

On September 27, 2012, U.S. Bank, through Usset, noticed a sheriff's sale for the Property to be conducted on November 28, 2012, which was served on plaintiffs on October 15, 2012.  See Smith Aff., Ex. T (September 27, 2012 Notice of Foreclosure Sale). The first date of publication of the notice of foreclosure occurred on October 12, 2012.  Id., Ex. U (Sheriff's Certificate of Sale and Foreclosure Record).

On October 5, 2012, a Notice of Pendency and Power of Attorney to Foreclose Mortgage executed by Corie Spencer, Assistant Vice President for U.S. Bank, and authorizing Usset to foreclose on the Mortgage and bid in on the Property on behalf of U.S. Bank, was recorded in the Hennepin County Office of the Recorder.  Federal Home Loan Mortgage Corp. v. Kelly Hood, et al., Civil No. 13-2634 (JNE/JSM), Declaration of Gerald G. Workinger, Jr. [Docket No. 13] ("Workinger Decl."), Ex. C

(September 17, 2012 Notice of Pendency and Power of Attorney to Foreclose).[3]  Usset, on behalf of U.S. Bank, appeared at the sheriff's sale on November 28, 2012, and exercised the power of sale clause in the mortgage.   Smith Aff., Ex. U (Sheriff's Certificate of Sale and Foreclosure Record).   The Sheriff's Certificate of Sale and foreclosure record is recorded in the Hennepin County Office of the Recorder.  Id.

On November 29, 2012, U.S. Bank conveyed the Property via a Limited Warranty Deed to Freddie Mac, which was recorded with the Hennepin County Office of the Recorder on December 17, 2012.  Id., Ex. V (Limited Warranty Deed).

Plaintiffs claimed that on or about April 13, 2011, Usset received constructive notice that U.S. Bank had engaged in "unsafe and unsound" banking practices regarding foreclosures, because as of that date, U.S. Bank had entered into a Consent Order with the Officer of Comptroller of the Currency in which U.S. Bank did not contest that it had engaged in a variety of "unsafe and unsound" banking practices in conducting foreclosures.  Id., ¶¶ 25, 27.

Plaintiffs asserted that U.S. Bank at all times knew or had reason to know that the Assignment of Mortgage, and the April 21, 2011 and August 12, 2011 Notices of Pendency and Powers of Attorney were void, and that the foreclosure violated Chapter 580 of the Minnesota Statues.  See Complaint, ¶ 30.

Plaintiffs alleged the following causes of action:

---

[3]    Exhibit H of the Smith Affidavit attached a document, entitled "Notice of Pendency and Power of Attorney to Foreclose Mortgage," which was recorded on October 5, 2012, but the document was comprised of only one page and was missing the signature and date page.  However, in the companion eviction action Federal Home Loan Mortgage Corp. v. Kelly Hood, et al., Civil No. 13-2634 (JNE/JSM), as part of the opposition to the Hoods' motion to vacate default judgment, the Declaration of Gerald G. Workinger, Jr. [Docket No. 13] attached the entire October 5, 2012 Notice of Pendency and Power of Attorney to Foreclose as Exhibit C.

In Count I, Determination of Adverse Claims, Minn. Stat. § 559.01, plaintiffs asserted a quiet title action seeking a determination regarding defendants' adverse interest in the Property.  Id., ¶¶ 33-39.  According to plaintiffs, in a quiet title action, the burden of proof is on the mortgagee asserting an adverse interest in the property, and that a defendant must prove its title to the mortgage by preponderance of the evidence. Id., ¶¶ 36, 37.  Plaintiffs maintained that defendants' claim to an interest in their Property was void because there existed unrecorded assignments of mortgage conveying the mortgagee's power of sale to third parties; U.S. Bank did not have the mortgagee's power of sale on the date of the Sheriff's sale; and the foreclosure was void because the individuals executing the foreclosure documents did not have legal authority to execute the documents when they signed the documents, and the defendants did not record the necessary powers of attorney authorizing the foreclosure.  Id., ¶ 38.

In Count II, plaintiffs sought a declaratory judgment under Minn. Stat. § 555.02 that the various assignments of mortgage, notices of pendency and powers of attorney were all void, and that plaintiffs remained the owner of the Property in fee title.  Id., ¶¶ 40-42.

In Count III, alleging slander of title, plaintiffs asserted that Usset, acting at direction of U.S. Bank, drafted and recorded documents that were false and not executed by legally authorized persons, and that Usset, at the direction of U.S. Bank, knew or should have known that the documents were false because unauthorized persons without authority executed the notices of pendency and the assignment of mortgage.  Id., ¶¶ 43-48.

As relief, plaintiffs sought: (1) a determination of adverse interest in the Property; (2) a declaration that the Sheriff's Certificate of Sale, the various assignments of mortgage, notices of pendency, and powers of attorney were all void; (3) a declaration that plaintiffs remained the owners of the Property in fee title; and (4) money damages. Id., Prayer for Relief.

Defendants moved to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Defendants contended that plaintiffs' quiet title fails because, having defaulted on the note, they have unclean hands and are not entitled the equitable relief afforded by the claim.  Defendant's Memorandum of Law in Support of Motion to Dismiss [Docket No. 7], pp. 8-9.  Additionally, defendants argued the quiet title claim failed because plaintiffs lacked standing to assert a claim based on an allegedly invalid assignment of mortgage, and the claim rested on speculative contentions of an unrecorded assignment from MERS to Freddie Mac, or that the signatory to the March 30, 2011 Assignment of Mortgage lacked authority to execute the document on behalf of MERS, or that the various foreclosure-related documents were defective or failed to be recorded in violation of state law.  Id., pp. 9-13.  As for the slander of title claim, defendants submitted that it must be dismissed because plaintiffs have not stated any facts to support the elements of the claim.  Id., pp. 13-14.  Finally, defendants asserted that the claim for declaratory relief fails because plaintiffs have not sufficiently pled any substantive claims.  Id., p. 15.

## II.   STANDARD OF REVIEW

In considering a motion to dismiss under Rule 12(b)(6), the pleadings are construed in the light most favorable to the non-moving party, and the facts alleged in

the complaints must be taken as true.  Ashley County, Ark. v. Pfizer, Inc., 552 F.3d 659, 665 (8th Cir. 2009).   In addition, a court must afford the plaintiff all reasonable inferences from those allegations.  Blankenship v. USA Truck, Inc., 601 F.3d 852, 853 (8th Cir. 2010).  At the same time, to withstand a motion to dismiss under Rule 12(b)(6), litigants must properly plead their claims under Rule 8 of the Federal Rules of Civil Procedure and meet the principles articulated by the United States Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662 (2009) and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

Under Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  The pleading standard articulated by Rule 8 "does not require detailed factual allegations, but it [does demand] more than a unadorned, the-defendant-unlawfully-harmed-me-accusation."  Iqbal, 556 U.S. at 678 (internal quotation marks and citations omitted).  A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S. at 555).  Thus, to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. (quoting Twombly, 550 U.S., at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 677 (quoting Twombly, 550 U.S. at 556).  "[T]he plausibility standard, which requires a federal court complaint to 'state a claim for relief that is plausible on its face, . . . asks for more than a sheer possibility that a defendant has acted unlawfully."  Ritchie v. St. Louis Jewish Light, 630 F.3d 713, 717 (8th Cir. 2011) (internal quotation and

citation omitted).  "Determining whether a complaint states a plausible claim for relief will, . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Iqbal, 556 U.S. at 679.

As a general rule, the Court may not consider materials "outside the pleadings" on a motion to dismiss, without converting the motion to dismiss to a motion for summary judgment.  Fed. R. Civ. P. 12(d).  "The court, however, 'may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings,'" without converting the motion into one for summary judgment.  See Little Gem Life Sciences, LLC v. Orphan Medical, Inc., 537 F.3d 913, 916 (8th Cir. 2008) (quoting Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (internal citation and punctuation omitted).); see also Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); Mattes v. ABC Plastics, Inc., 323 F.3d 695, 697 n.4 (8th Cir. 2003).

With these standards in mind, the Court turns to the defendants' motion to dismiss.

III.   **DISCUSSION**

A.   **Quiet Title**

In Minnesota, "[a]ny person in possession of real property personally. . . may bring an action against another who claims an estate or interest therein, or a lien thereon, adverse to the person bringing the action, for the purpose of determining such adverse claim and the rights of the parties, respectively."  Minn. Stat. § 559.01.

Plaintiffs argued that their quiet title claim is not barred by unclean hands because Minnesota law suggests that equitable and legal remedies can be fashioned to such a claim.  See Memorandum In Opposition to Motion to Dismiss [Docket No. 10], pp. 8-11.  In addition, plaintiffs contended that defendants have not proven that they have not done equity as to defendants, because only the holder of the note is entitled to enforce the note and assert the defense of unclean hands.  Id., pp. 11-12.

In response to defendants' standing argument and the contention that their claims were speculative, plaintiffs asserted that all they had to plead was that they were in possession of the Property and defendants had a claim adverse to them, and it was not necessary for them to anticipate or state the nature of the adverse claim in the Complaint.  Id., pp. 12-16.  Plaintiffs then contended that their quiet title claim was viable because there is an unrecorded assignment of the mortgage held by Freddie Mac, rendering the foreclosure void under Minnesota law.  Id., pp. 16-18.  In support, plaintiffs apparently rely on language from the Freddie Mac Custodial Agreement quoted in their Complaint, (Complaint, ¶ 15), and an unsworn declaration from a legal assistant for plaintiffs' counsel, who represented that on June 19, 2013, she entered plaintiffs' information into a Freddie Mac loan lookup web page, and attached the results of the lookup, which stated: "Yes.  Our records show that Freddie Mac is the owner of your mortgage and it was acquired on July 14, 2005."  Declaration of Talitha Davey [Docket No. 11] ("Davey Decl."), ¶¶ 2-4, Ex. 1 (page dated June 18, 2013).

Plaintiffs' arguments fail for several of reasons.

First, plaintiffs' allegations "on information and belief" about an unrecorded assignment and the alleged lack of legal authority by individuals signing various

foreclosure-related instruments,[4] are insufficient to state a claim for relief.   See

Complaint, ¶¶ 11, 12, 13, 19, 21.   See Karnatcheva v. JPMorgan Chase Bank, NA, 704

F.3d 545, 548 (8th Cir. 2013), cert. denied 134 S.Ct. 72 (2013) (affirming the district

court's dismissal of the plaintiff's quiet-title claim "because the plaintiff's pleadings, on

their face, have not provided anything to support their claim that the defendants'

adverse claims are invalid, other than labels and conclusions, based on speculation that

transfers affecting payees and assignments of the notes were invalid."); Yang Mee

Thao-Xiong v. American Mortg. Corp., Civil No. 13-354 (MJD/TNL), 2013 WL 3788799,

at *4 (D. Minn. July 18, 2013) (quoting Novak v. JP Morgan Chase Bank, N.A., Civ. No.

12-589 (DSD/LIB), 2012 WL 3638513, at *4 (D. Minn. Aug. 23, 2012), aff'd, 518 F.

App'x 498 (8th Cir. 2013)) (finding that plaintiffs "'must state facts sufficient to allow the

court to draw the reasonable inference that . . . she is in possession and that a

defendant claims a right or title to the property, but has no such right or title.'").

        While it is true that the "Eighth Circuit has yet to address whether a pleading

based on 'information and belief' is sufficient to state a claim," LaCroix v. U.S. Bank,

NA, Civ. No. 11-3236 (DSD/JJK), 2012 WL 2357602, at *6 (D. Minn. June 20, 2012),

the Eighth Circuit and courts in this District have unequivocally held that conclusory

allegations lacking in factual support are insufficient to satisfy the Rule 8 pleading

standards or the standards proscribed by the Supreme Court in Iqbal and Twombly.

See Karnatvcheva, 704 F.3d at 548; Blaylock v. Wells Fargo Bank, N.A., 502 Fed.

Appx. 623, 2013 WL 1688894, at *1 (8th Cir. April 19, 2013) (based on Karnatcheva,

---

[4]      Under Minn. Stat. § 358.50, an acknowledgment made in a representative
capacity "is prima facie evidence" that the instrument or electronic record was executed
and delivered with proper authority.

dismissed quiet title claim for falling short of federal pleading requirements); <u>Iverson v.</u> <u>Wells Fargo Bank, N.A.</u>, 2 Fed. Appx. 624, 2013 WL 1688903, at *1 (8th Cir. April 19, 2013) (unpublished) (same); <u>Sorem v. Bank of New York Mellon</u>, Civ. No. 13-290 (DWF/JSM), 2013 WL 4611115, at *2-3 (D. Minn. Aug. 29, 2013); <u>Ko v. Mortgage Elec.</u> <u>Registration Sys.</u>, Civ. No. 13-596 (JRT/AJB), 2013 WL 4052680, at *2 (D. Minn. Aug. 9, 2013); <u>Quale v. Aurora Loan Services, LLC</u>, Civ. No. 13-621 (JNE/AJB), 2013 WL 3166584, at *1 (D. Minn. June 20, 2013) (string citation omitted); <u>Lara v. Federal Nat'l</u> <u>Mortg. Ass'n</u>, Civ. No. 13-676 (SRN/AJB), 2013 WL 3088728, at *3 (D. Minn. June 18, 2013); <u>Schumacher v. Federal Home Loan Mortg. Corp.</u>, Civil No. 13-29 (DSD/FLN), 2013 WL 3033746, *2 (D. Minn. June 17, 2013).  Indeed, plaintiffs' assertion that "[u]pon information and belief, Freddie Mac acquired its interest in the Mortgage prior to the commencement of the foreclosure by advertisement in this case," and the assertion that "[u]pon information and belief, prior to 03/30/11, the loan was deactivated with MERS," (Complaint, ¶¶ 12, 13), are exactly the type of implausible allegations that <u>Twombly</u> and <u>Iqbal</u> prohibit, and decisions from this District have uniformly rejected.  <u>See</u> <u>Pope v. Fed</u> <u>Home Loan Mortgage Corp</u>., Civ. No. 12-3094, 2013 WL 2251001, at *3 (D. Minn. May 22, 2013) (The Popes allege that "[u]pon information and belief, Freddie Mac acquired its interest in the [ ] mortgage prior to the commencement" of foreclosure proceedings but "[n]o assignment of mortgage from Wells to Freddie Mac appears in the records of the Ramsey County Recorder."  [ ] This is precisely the kind of implausible allegation that <u>Twombly</u> and <u>Iqbal</u> prohibit. The Popes ask the Court to assume that an assignment occurred because they allege it occurred. But there is a more plausible explanation for the absence of any assignment in the Ramsey County records: there

was no such assignment. The Court need not accept as true implausible allegations, as offered by the Popes here. To the extent their claims depend on this alleged unrecorded assignment, those claims fail to state claims on which relief can be granted.").

Here, the only "factual" support for plaintiffs' claim that there was an unrecorded assignment of their mortgage from MERS to Freddie Mac prior to the foreclosure – a June 18, 2013 web screenshot attached to the unsworn declaration by Talitha Davey and language purportedly from taken from Freddie Mac's Custodial Agreement, (Complaint, ¶ 15) – cannot save plaintiffs' Complaint from dismissal.

For starters, even if the Court could consider the web screenshot in response to a motion to dismiss, it is attached to a declaration that was not made under penalty of perjury.  Thus, it has no evidentiary value.  <u>See</u> 28 U.S.C. § 1746 (declaration has same evidentiary value as affidavit only if "it is signed under penalty of perjury"); <u>Burgess v. Moore</u>, 39 F.3d 216, 217-18 (8th Cir. 1994) ("documents signed and dated under penalty of perjury are treated as verified and satisfy affidavit requirements in federal proceedings").

Moreover, the screen shot does not identify plaintiffs or their mortgage, thus, precluding the Court from drawing any inference, much less a reasonable inference, that MERS secretly assigned a mortgage to Freddie Mac or that the assignment was unrecorded, all in violation of Minn. Stat. § 580.02(3).  However, even assuming that this screen shot did refer to plaintiffs' Property, all that it says is that Freddie Mac is the "owner" of the mortgage.  This does not mean that MERS actually assigned the mortgage to Freddie Mac in 2005 or that it no longer held legal title to the mortgage in 2005.  As the Supreme Court of Minnesota recognized in <u>Jackson v. Mortgage</u>

Electronic Registration Systems, Inc., it is common for one party to hold legal title to a mortgage on behalf of another party who has "equitable ownership" of the mortgage. 770 N.W.2d 487, 499-501 (Minn. 2009).  For example, mortgage servicers typically hold legal title to the mortgage on behalf of the equitable owner of the mortgage, usually the holder of the promissory note secured by the mortgage. Plaintiffs have simply not stated facts sufficient to allow the Court to draw the reasonable inference that MERS secretly conveyed legal title to the mortgage to Freddie Mac in July 2005 and that there was an unrecorded assignment before foreclosure.  See Vollmer v. Federal Home Loan Mortg. Corp., Civil File No. 13-11 (MJD/FLN), 2013 WL 3280254, at *3 (D. Minn. June 26, 2013) (rejected screen shot from the Freddie Mac website stating that "Freddie Mac is the owner of your mortgage" as a basis for allowing the court to draw the reasonable inference that Wells Fargo secretly assigned and failed to record a mortgage assignment to Freddie Mac).

As for the language relied upon by plaintiffs from the Custodial Agreement – "[t]he Seller/Servicer must deliver to the Custodian a duly prepared and executed assignment of the security instrument from Seller/Servicer to Freddie Mac in recordable form but not recorded" – this Court has no basis for assuming that the language even applies to MERS, plaintiffs or the mortgage in this case.  But even if the language did govern plaintiffs' mortgage, it does not provide a plausible inference that an assignment to Freddie Mac actually occurred.  See, e.g., Richter v. Federal Nat'l Mortg. Ass'n, Civ. No. 13-475 (ADM/JSM), 2013 WL 3223377, at *3 (D. Minn. June 25, 2013) (dismissing the quiet title claim, and stating "[s]imply quoting a Fannie Mae policy document does not plausibly establish how Fannie Mae obtained an unrecorded interest in the Property

in this case.   Plaintiffs' allegations do not rise above speculation."); <u>Cheng Lee v. Federal Nat'l Mortg. Ass'n</u>, Civ. No. 13-180 (DWF/SER), 2013 WL 2631904, at *2 n.4 (D. Minn. June 12, 2013) ("The only fact even arguably cited in support of the conclusion that there is an unrecorded assignment is that Fannie Mae's Seller/Servicer Guides require that an assignment of mortgage be executed in favor of Fannie Mae. This conclusory allegation is insufficient."); <u>Dunbar</u>, 853 F. Supp.2d at 848, <u>aff'd</u>, 709 F.3d 1257 (8th Cir. 2013) ("Plaintiffs appear to argue that an unrecorded assignment from Option One to Wells Fargo must exist that renders invalid the 2010 assignment from Option One to Wells Fargo. The PSAs do not, however, say that Option One actually assigned the mortgage years ago, only that it had agreed to do so.   Mere speculation about what may have happened does not allow a plausible inference when defendants present a facially valid record of assignment from Option One to Wells Fargo.   As a result, dismissal is warranted.").   In other words, the Custodial Agreement does not require an actual and present assignment from the servicer to Freddie Mac. Rather, it simply requires the servicer to prepare an assignment document that can be recorded when and if the mortgage is assigned to Freddie Mac.

Likewise, plaintiffs' allegations on "information and belief" that Lawrence or Liebo lacked signing authority on behalf for the assignment of mortgage or foreclosure-related documents, (Complaint, ¶¶ 11, 21), "do not hold up to even the slightest scrutiny."   <u>See Simmer v. HSBC Bank USA, N.A.</u>, Civ. No. 13-1549 (DSD/AJB), 2013 WL 6244710, at *3 (D. Minn. Dec. 3, 2013) (plaintiffs' allegations regarding individuals' alleged lack of authority to sign Notices of Pendency and Powers of Attorney failed because the allegations are "merely conclusory assertions without any factual allegations to support

them."); Segura v. Federal Nat'l Mortg. Ass'n, Civ. No. 13-531 (SRN/JJK), 2013 WL 3034096, at *2 (D. Minn. June 17, 2013) (rejecting "contention that nearly every individual who signed a document in support of the foreclosure did not have the authority to do so" as "implausible and speculative, just the sort of 'vague claims' that have been rejected repeatedly by courts in this District and by the Eighth Circuit Court of Appeals.") (citing Mine v. Federal Home Loan Mortg. Corp., Civ. No. 13–220, 2013 WL 2443852, at *4 (D. Minn. June 5, 2013) (Montgomery, J.)); Welk v. Federal Nat'l Mortg. Ass'n, Civ. No. 12-2864 (SRN/TNL), 2013 WL 2155463, at *4 (D. Minn., May 17, 2013) ("[Plaintiff] insists that the individual who signed the assignment to Wells Fargo and the individual who signed the power of attorney allowing Wells Fargo to institute foreclosure proceedings did not have the authority to do so, and that the law firm and Trisko knew that the individuals had no authority but proceeded with the foreclosure anyway. But there are no facts of any kind—no evidence pled supporting these allegations."); Stilp v. HSBC Bank USA, N.A., Civ. No. 12-3098 (ADM/JJK), 2013 WL 1175025, at *4 (D. Minn. Mar. 20, 2013), aff'd, 2013 WL 5340399, at *3 (8th Cir. Sept. 25, 2013) ("Plaintiffs plead upon information and belief that all individuals executing assignments of mortgage and power of attorney lack legal authority to do so. Plaintiffs believe the individuals executing assignments and POAs are employed by organizations other than the ones on whose behalf they have signed. . . . Even if the individuals do work for other organizations, it does not mean that they could not also work for or be hired as agents on behalf of different clients. Absent even an iota of evidence of fraud, these are conclusory allegations which do not state a claim for which relief may be

granted.") (citations omitted).   Plaintiffs provided no factual support for these bald assertions.

As for plaintiffs' allegations that there exists no recorded power from U.S. Bank to Usset authorizing Usset to execute documents on behalf of U.S. Bank prior to the commencement of the non-judicial foreclosure, not only is this claim without a factual basis, but it ignores the documents recorded with the Hennepin County Recorder.  On October 5, 2012, a Notice of Pendency and Power of Attorney to Foreclose Mortgage was recorded in the Hennepin County Office of the Recorder.  <u>See</u> Workinger Decl., Ex. C.  The Power of Attorney empowered Usset to foreclose the mortgage by advertisement and to bid for the Property in U.S. Bank's name.  <u>Id.</u>

Under Minnesota law, the Notice of Pendency must be filed before the first publication of the foreclosure notice and the power of attorney must be "recorded prior to the sale. . . ."  Minn. Stat. § 580.032, subd. 3; Minn. Stat. § 580.05.  Here, the first date of publication of the notice of foreclosure occurred on October 12, 2012 and the sheriff's sale occurred on November 28, 2012.  Smith Aff., Ex. U (Sheriff's Certificate of Sale and Foreclosure Record).  Because the Power Attorney was recorded before the sale of the Property, it is timely under Minnesota law.  <u>See</u> <u>Smith v. Wells Fargo Bank, N.A.</u>, Civil No.13-0439 (SRN/TNL), 2013 WL 5720150, at *3 (D. Minn. Oct. 21, 2013) ("Plaintiff claims that no valid power of attorney existed when the law firm of Shapiro & Zielke, LLP, created the Notice of Sale and caused it to be published, because the Power of Attorney was executed after the date of the Notice of Sale and after the date of the first publication of the Notice of Sale. However, the relevant statute does not dictate when the power of attorney must be executed. Rather, it requires only that the

power of attorney be recorded prior to the foreclosure sale. Here, the Power of Attorney was recorded on April 26, 2012, and the property was sold at a foreclosure sale on August 7, 2012. Thus, Defendant complied with the statutory requirements.").

In summary, contrary to plaintiffs' unsupported allegations, the documents referenced in and attached to the Complaint and filed in the public record, establish that there was an unbroken chain of title from Bell to MERS, from MERS to U.S. Bank prior to foreclosure, and from U.S. Bank to Freddie Mac post-foreclosure. Further, the Assignment of Mortgage, Notices of Pendency and Powers of Attorney were properly recorded and there is no evidence that these assignments were void for any reason. The Sheriff's Certificate of Sale, (Smith Aff., Ex. U), is prima facie evidence that U.S. Bank (the foreclosing entity) complied with all legal requirements regarding the foreclosure and that the foreclosure and sale were proper. Minn. Stat. § 580.19. Plaintiffs stated no facts in their Complaint to rebut this evidence.

Second, even if the language from Custodial Agreement described in the Complaint did apply to plaintiffs' mortgage, and there was any truth to plaintiffs' speculative statements about the lack of signing authority of Lawrence (as to the Assignment of Mortgage) and Lawrence and Liebo (as to the Notices of Pendency and Powers of Attorney), plaintiffs suffered no injury in fact as a result and, therefore lack standing to pursue a quiet title claim on this basis. Novak, 2012 WL 3638513 at *6, aff'd, 518 F. App'x 498 (8th Cir. 2013) ("plaintiffs lack standing to challenge the assignment: they are not parties to the assignment and any dispute would be between the assignor and assignee."); Quale, 2013 WL 3166584, at *1 ("Insofar as the Quales based their claims on the allegations that an individual lacked authority to execute the

assignment of mortgage, the Court rejects this argument because the Quales lack standing to make such a challenge, and even if they did have standing, their claims are fatally implausible and speculative."); <u>Lara</u>, 2013 WL 3088728, at *3 ("Plaintiffs' reliance on the Seller/Servicer Guides or Fannie Mae's Custodial Agreement is similarly unavailing.  The Guide is, at best, a contract between Fannie Mae and its servicers. It is not for the benefit of Plaintiffs and imposes no duties on any entity vis-a-vis the borrower. The Custodial Agreement, too, is not for the benefit of any borrower, but is an agreement between Fannie Mae and unknown entities. Even if Wells Fargo was a party to either of these documents and breached its obligations under the documents, that failure would be for Fannie Mae, not Plaintiffs, to prosecute."); <u>Segura</u>, 2013 WL 3034096, at *3 ("Nor does the Seguras' reliance on the Seller/Servicer Guides or Fannie Mae's Custodial Agreement make their allegation less speculative. The Guide is, at best, a contract between Fannie Mae and its servicers. It is not for the benefit of the Seguras and imposes no duties on any entity vis-a-vis the borrower. The Custodial Agreement, too, is not for the benefit of any borrower, but is an agreement between Fannie Mae and unknown entities. Even if Wells Fargo was a party to either of these documents and breached its obligations under the documents, that failure would be for Fannie Mae, not the Seguras, to prosecute."); <u>Forseth v. Bank of Am., N.A.</u>, Civil No. 13-38 (SRN/TNL), 2013 WL 2297036, at *5 (D. Minn. May 24, 2013) ("The allegations regarding unauthorized signatures on every document related to the foreclosure process for the Forseths' mortgage are similarly implausible and pure speculation.  But even if the signatures were unauthorized, the harm caused by the lack of signing authority is harm to MERS or BAC, in the case of Mr. Bruns, or BAC/Bank of America or

Fannie Mae in the case of Mr. McDaniel and Ms. Girvan. There is no allegation in the Amended Complaint that any of these individuals falsely initiated foreclosure proceedings against the Forseths' property, and the documents in the public records belie such a claim in any event. The Forseths defaulted on their mortgage by not making payments as they promised. Even if all three of these individuals lacked signing authority, as the Forseths claim, they have suffered no injury as a result and therefore have no standing to pursue their claims.") (citations omitted); Welk, 2013 WL 2155463, at *3 ("[the] 'Guide' about which the Amended Complaint makes much hay is, at best, a contract between Fannie Mae and its servicers. It is not for the benefit of [plaintiff] and imposes no duties on any entity vis-a-vis the borrower. So even if Wells Fargo failed to comply with its purported obligations under the 'Guide,' such a failure would be for Fannie Mae, not [plaintiff], to prosecute."); Kaylor v. Bank of Am., N.A., Civ. No. 12-1586 (DSD/SER), 2012 WL 6217443, at *5 (D. Minn. Dec. 13, 2012) (finding that even if individual who effectuated the assignment of the mortgage did not have authority to do so, homeowners not a party to the mortgage assignment had no standing to challenge the assignment.); Sovis v. Bank of New York Mellon, Civ. No. 11-2253 (DWF/LIB), 2012 WL 733758, at *4-5 (D. Minn. Mar. 6, 2012) (finding that general allegations that defendants unlawfully foreclosed on plaintiff's home pursuant to a series of invalid assignments of mortgage, "cannot furnish the causal nexus necessary to establish standing to assert her claims."); Gerlich v. Countrywide Home Loans, Inc., Civ. No. 10-4520 (DWF/LIB), 2011 WL 3920235, at *2-3 (D. Minn. Sept. 7, 2011) (plaintiff not a party to the assignment and, therefore, lacked standing to assert a claim regarding the assignment); Kebasso v. BAC Home Loans Servicing, LP, 813 F. Supp.2d 1104, 1113

(D. Minn. 2011) (finding that mortgagors, lacked standing to challenge the defendants' authority to foreclose, as "'any disputes that arise between the mortgagee holding legal title and the assignee of the promissory note holding equitable title do not affect the status of the mortgagor for purposes of foreclosure by advertisement.' The court reaffirmed the principle that 'legal and equitable title can be separated' and if a dispute arises between the holder of legal and equitable title with respect to foreclosure, '[i]t is a matter between them alone, and does not concern the mortgagor,' and such a transaction does "not affect the interests of the mortgagor, and he could not object.'") (quoting Jackson, 770 N.W.2d at 500).

Third, a quiet title action is a proceeding in equity and as such, a plaintiff who seeks to quiet title must come to court with clean hands. Haubrich v. U.S. Bank Nat'l Ass'n, Civ. No. 12-565 (DSD/TNL), 2012 WL 3612023, at *3 (D. Minn. Aug. 21, 2012), aff'd, 720 F.3d 979 (8th Cir. 2013); see also Yang Mee Thao-Xiong, 2013 WL 3788799, at *4 (plaintiff's unclean hands in defaulting on her mortgage prevented her from seeking equitable relief); Stilp, 2013 WL 1175025, at *4 ("Plaintiffs defaulted on their mortgage loan over four years ago.  They seek to declare their mortgage invalid after defaulting; as such, they come to the present case with unclean hands.") (citation omitted).  Plaintiffs, having defaulted on their mortgage, come to court with unclean hands and are precluded from pursuing a quiet title claim. Novak, 2012 WL 3638513, at *4 (citing Santee v. Travelers Ins. Co., 275 N.W. 366, 368 (Minn. 1937)) (finding that the plaintiffs had unclean hands because they were in default on their mortgage and, therefore, that they could not state a quiet title claim).

For all the reasons stated above, the Court finds that defendants' motions to dismiss the quiet title actions against them should be granted.

## B. <u>Slander of Title</u>

To state a claim for slander of title, a plaintiff must allege facts that show: (1) there was a false statement concerning the real property owned by the plaintiff; (2) the false statement was published to others; (3) the false statement was published maliciously; and (4) the publication of the false statement concerning title to the property caused the plaintiff pecuniary loss in the form of special damages. <u>Paidar v. Hughes</u>, 615 N.W.2d 276, 279-80 (Minn. 2000) (citation omitted). To plead malice, plaintiffs "must raise factual allegations sufficient to create a plausible claim that at least one of the [ ] parties acted with a reckless disregard for the truth, 'despite a high degree of awareness of probable falsity.'" <u>Dunba</u>r, 709 F.3d at 1258 (quoting <u>Brickner v. One Land Dev. Co.</u>, 742 N.W.2d 706, 711 (Minn. Ct. App. 2007)); <u>see</u> <u>also</u> <u>Quevli Farms, Inc. v. Union Sav. Bank & Trust Co.</u>, 178 Minn. 27, 226 N.W. 191, 192 (Minn. 1929) (concluding that to be a malicious statement, it must be a "groundless disparagement of the plaintiff's title or property . . . made without probable cause."). The filing of an instrument known to be inoperative is a false statement that, if done maliciously, constitutes slander of title. <u>Kelly v. First State Bank of Rothsay</u>, 177 N.W. 347, 347 (Minn. 1920).

Plaintiffs responded to defendants' motion to dismiss their slander of title claim by merely restating the allegations from the Complaint. Pl. Mem., pp. 18-19. The Court finds the claim must be dismissed because plaintiffs have alleged no facts from which this Court could infer that defendants made a false statement, acted maliciously or that

plaintiffs suffered any pecuniary loss from a publication concerning title to his property. See Ko, 2013 WL 4052680, at *4 ("Ko alleges that Shapiro drafted and recorded documents that it knew were false because they were executed without the proper authority. But Ko fails to allege that Shapiro acted with malice. Because Ko fails to allege malice, he has not stated a claim for slander of title, and this claim will be dismissed.") (internal citation omitted); Lara, 2013 WL 3088728, at *3 (dismissing slander of title claim based on allegation that individuals signing documents lacked authority to do so and stating "[plaintiffs pleaded no plausible facts to support their allegations regarding signing authority.").

Additionally, even assuming that documents recorded as to the Property are technically false, this does not amount to a cloud on the title of the Property where plaintiffs have clouded the title based on their default.  See Pope, 2013 WL 2251001 at *4 ("An unauthorized assignment may be technically false, but it does not cloud the title to property on which the mortgagee has undisputedly defaulted.  The only cloud on the title of the Popes' property is a cloud of their own making: they did not make the payments due under their mortgage and as a result, they lost their property through foreclosure.").

For all of these reasons, defendants' motion to dismiss plaintiffs' slander of title claim should be granted.[5]

---

[5]      The Court notes that a slander of tile claim is subject to the heightened pleading standard of Fed. R. Civ. P. 9(b).  See Murphy v. Aurora Loan Servs., LLC, 699 F.3d 1027, 1032 (8th Cir. 2012) (Rule 9(b) applies to slander of title claims); see also Ko, 2013 WL 3088728, at *4; Pope, 2013 WL 2251001, at *4; Haubrich, 2012 WL 3612023, at *6.  Defendants did not argue in favor of dismissal based on plaintiffs' failure to meet this standard.  Suffice it to say, however, having failed to plead any facts to support a

C.    **Declaratory Judgment**

A declaratory judgment is a remedy, not a cause of action.  See, e.g., Onvoy, Inc. v. ALLETE, Inc., 736 N.W.2d 611, 617-618 (Minn. 2007) (a declaratory judgment action may be maintained only where there is a justiciable controversy); Buck v. American Airlines, Inc., 476 F.3d 29, 33 n.3 (1st Cir. 2007) (noting that the Declaratory Judgment Act, 28 U.S.C. § 2201 "creates a remedy, not a cause of action").  In light of the Court's conclusion that plaintiffs' substantive claims must be dismissed under Rule 12(b)(6), "[they are] left with a remedy in search of right."  Scanlon v. Northwest Mortg., Inc., Civ. No. 11-3128 (MJD/TNL), 2012 WL 2885131, *7 (D. Minn. July 13, 2012); see also Lara, 2013 WL 3088728 at *3 (finding that where plaintiff had failed to state a substantive claim, the Amended Complaint also failed to state a claim for declaratory judgment) (citing Weavewood, Inc. v. S & P Home Invs., LLC, 821 N.W.2d 576, [579] (Minn. 2012) ("A declaratory judgment is a procedural device through which a party's existing legal rights may be vindicated so long as a justiciable controversy exists.")).

Plaintiffs' claim for declaratory judgment must be dismissed because there is no legal basis for affording the remedy.

For all of these reasons, this Court recommends that plaintiffs' suit be dismissed with prejudice.[6]

---

slander of title claim, the claim also fails to meet the Rule 9(b) standard.  Therefore, the Court recommends dismissal of the suit with prejudice.

[6]    "Ordinarily dismissal of a [pleading] for failure to comply with Rule 8 should be with leave to amend."  Michaelis v. Neb. State Bar Ass'n., 717 F.2d 437, 438-39 (8th Cir. 1983).  Nonetheless, when a complaint is so deficient or defective that the court is convinced that its defects cannot be cured through re-pleading, dismissal with prejudice is appropriate.  That is the case here.  See McLean v. United States, 566 F.3d 391, 400 (4th Cir. 2009) ("to the extent . . . that a district court is truly unable to conceive

## IV.    RECOMMENDATION

For the reasons set forth above, it is recommended that:

1.    Defendants' Motion to Dismiss [Docket No. 5] be **GRANTED**.

2.    This matter be dismissed with prejudice.

Dated: January 6, 2014

s/ *Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

## NOTICE

Under D. Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **January 20, 2014**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under this Rules shall be limited to 3500 words.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

---

of any set of facts under which a plaintiff would be entitled to relief, the district court would err in designating [a] dismissal to be without prejudice.  Courts, including this one, have held that when a complaint is incurable through amendment, dismissal is properly rendered with prejudice and without leave to amend."); McKesson HBOC, Inc. v. New York State Common Ret. Fund, Inc., 339 F.3d 1087, 1096 (9th Cir. 2003) (dismissal with prejudice is appropriate where "deficiencies in [plaintiff's] claims cannot be cured by amendment"); Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995) (a pro se litigant should be given chance to amend complaint unless it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment."); Ikechi v. Verizon Wireless, Civ. No. 10-4554 (JNE/SER), 2011 WL 2118797, at *5, n. 6 (D. Minn. April 7, 2011) (recommending dismissal with prejudice of plaintiff's fraud claims because it was unlikely that plaintiff could cure the defective pleading on re-pleading), 2011 WL 2118791, *3 (D. Minn. May 25, 2011) (adopting the Report and Recommendation of Magistrate Judge Rau regarding dismissal of plaintiff's fraud claims for failure to satisfy the particularity requirement of Rule 9(b)).